UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

GURPREET SINGH,

Petitioner,

v.

WARDEN,

Respondent.

CAUSE NO. 3:26cv1185 DRL-SJF

OPINION AND ORDER

Immigration detainee Gurpreet Singh, by counsel, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241, alleging he is unlawfully confined in violation of the laws or Constitution of the United States.

Mr. Singh is a citizen of India who entered the United States without inspection in or around 2017 [8-1]. He came to the attention of immigration officials in 2026 when he was driving a commercial vehicle and stopped at a weigh station in Indiana. Removal proceedings were initiated against him, and in July 2026, he was taken into custody by United States Immigration and Customs Enforcement (ICE) agents in Indiana pursuant to an administrative warrant. He is currently detained at Miami Correctional Facility pending the outcome of his removal proceedings.

He argues that he has been unlawfully denied an opportunity for release on bond because officials view him as categorically ineligible for bond under 8 U.S.C. § 1225(b)(2). He seeks immediate release from custody or a prompt custody redetermination hearing

before an immigration judge. In an order to show cause, the court directed the Warden to answer the petition in light of *Cirrus Rojas v. Olson*, __F.4th__, 2026 WL 2198315, 2 (7th Cir. July 30, 2026), which joined a large majority of other courts in concluding that § 1225(b)(2) does not apply to noncitizens when they are not "seeking admission" within the statute's meaning. *See also De Jesús Aguilar v. English*, No. 3:25cv898, 2025 WL 3280219, 8 (N.D. Ind. Nov. 25, 2025); *Singh v. English*, No. 3:25cv962, 2025 WL 3713715, 5 (N.D. Ind. Dec. 23, 2025) ("In short, under § 1225(b)(2), an alien must be an 'applicant for admission,' and the alien must be 'seeking admission,' and an examining immigration officer must determine that this alien 'is not clearly and beyond a doubt entitled to be admitted' for mandatory detention to occur under this subsection."). The Warden was instructed to address why this case differs from *Cirrus Rojas*, *Aguilar*, and *Singh*, why the court should examine subject matter jurisdiction differently, and whether there is cause to address the outcome differently. That response was filed, and the deadline has expired for Mr. Singh to file a reply.

As noted in the order to show cause, our circuit recently concluded, consistent with *Aguilar* and *Singh*, that 8 U.S.C. § 1225(b)(2) does not apply to noncitizens who are not otherwise "seeking admission" within the statute's meaning. *Cirrus Rojas*, WL 2198315, 2; *see also De Jesús Aguilar*, 2025 WL 3280219; *Singh*, 2025 WL 3713715; *Mejia Diaz*, 2025 WL 3640419; *cf. Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 175 F.4th 828 (7th Cir. 2026) (reading as a 2-1 decision in the result only and at times as a 1-1-1 decision in the rationale). In light of this decision, the Warden concedes that Mr. Singh's detention is governed by 8 U.S.C. § 1226, the "default rule" for detention of noncitizens who are "already present in the United States," *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018), which entitles him to an

individualized custody redetermination hearing [8]. The Warden nevertheless argues that Mr. Singh must request a hearing and otherwise exhaust his available administrative remedies before being granted habeas relief.

All agree that 8 U.S.C. § 1226 applies. "On a warrant issued by the Attorney General, an alien may be arrested and detained" while removal proceedings are pending, and the Attorney General "(1) may continue to detain the [noncitizen]; and (2) may release the [noncitizen] on (A) bond . . . or (B) conditional parole" until removal proceedings conclude. 8 U.S.C. § 1226(a). The court, as it always does, begins with the statute's plain language. It is permissive, not mandatory, and it affords an election (insofar as the limitations in § 1226(c) do not apply of course).

Immigration officials issued a warrant for Mr. Singh's arrest [8-1]. By statute, a noncitizen detained pursuant to a warrant may be released by the Attorney General (subject to certain statutory limitations that no one argues apply here), or he may be detained pending a decision on whether he will be removed from the United States. *See* 8 U.S.C. §§ 1226(a), (c). Our high court likewise has recognized the permissive nature of this language. *See Johnson v. Guzman Chavez*, 594 U.S. 523, 526-27 (2021); *Jennings*, 583 U.S. at 306.

The Attorney General has delegated this discretion by regulation—first, to specified immigration officers who may "release an alien not described in [§ 1226(c)(1) (regarding criminal aliens)], under [bond or conditional parole]; provided that the alien must demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." 8 C.F.R. §§ 236.1(c)(8), 1236.1(c)(8). That is called an initial custody determination. After that initial

custody determination, a noncitizen may apply to an immigration judge for a custody redetermination, and the immigration judge is authorized to exercise the authority in § 1226 "to detain the alien in custody, release the alien, and determine the amount of bond, if any, under which the respondent may be released." 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1); *see also* 8 C.F.R. § 1003.19 (detailing procedures for custody or bond redeterminations by an immigration judge). When a noncitizen files this motion, an immigration judge, under immigration court rules, must "in general" schedule a "hearing for the earliest possible date," though in "limited circumstances" the immigration judge may rule on a bond redetermination request without a hearing. Immig. Ct. Practice Manual § 9.3(d). A noncitizen may appeal a decision relating to bond and custody determinations to the Board of Immigration Appeals. 8 C.F.R. §§ 236.1(d)(3), 1236.1(d)(3).

Both noncitizens and the government alike must comply with our immigration laws, as they are written and as they must work within constitutional demands. *See, e.g., Zadvydas v. Davis*, 533 U.S. 678, 701 (2001); *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954). The government has predetermined the procedures that apply to noncitizens who are arrested and detained under § 1226, and due process requires merely that these procedures be fairly given, not taken away. *See Accardi*, 347 U.S. at 266-68; *see, e.g., Jideonwo v. I.N.S.*, 224 F.3d 692, 697 (7th Cir. 2000); *Montilla v. I.N.S.*, 926 F.2d 162, 166 (2d Cir. 1991). Mr. Singh gives no reason to believe this process is insufficient. Absent something else, the court will order no more and no less than what is expected of immigration officials by law. *See Accardi*, 347 U.S. at 268; *see also United States v. Nixon*, 418 U.S. 683, 696 (1974) ("So long as this regulation [delegating Attorney General's discretion to a Special Prosecutor] remains

in force the Executive Branch is bound by it, and indeed the United States as the sovereign composed of the three branches is bound to respect and to enforce it.").

The court has the same expectation of compliance for the petitioner—follow the rules. It appears Mr. Singh did not seek a custody redetermination before an immigration judge before filing his petition. The "general rule" is that parties must "exhaust prescribed administrative remedies before seeking relief from the federal courts." *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992) (superseded by statute on other grounds). But when "exhaustion of administrative remedies is not statutorily mandated," "sound judicial discretion governs" whether it must be done. *Gonzalez v. O'Connell*, 355 F.3d 1010, 1016 (7th Cir. 2004) (citation omitted). A court may require administrative exhaustion in § 2241 cases challenging a noncitizen's detention as a matter of judicial economy and administrative comity. *Id.* at 1017. A petitioner "with a statutory argument that has a reasonable prospect of affording him relief may not skip the administrative process and go straight to federal court," *id.* at 1018, though "individual interests demand that exhaustion be excused when . . . appealing through the administrative process would be futile because the agency . . . has predetermined the issue," *id.* at 1016.

Perhaps he thought it futile, because an immigration judge might follow *In re Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025). However, in light of the circuit's recent opinion in *Cirrus Rojas*, futility is no longer reasonable to presume. The Warden concedes that Mr. Singh is entitled to an individualized custody redetermination under *Cirrus Rojas*, and principles of judicial estoppel would impact the government's ability to advance a different position in immigration court. *See Cannon-Stokes v. Potter*, 453 F.3d 446, 448 (7th Cir. 2006).

In these circumstances, the appropriate course is to put the ball in Mr. Singh's to file a motion for a custody redetermination in his pending removal proceedings.[1] He does not need a finding from this court that he is covered by § 1226(a), because the circuit held as much in binding precedent, and the Warden agrees that his detention is governed by that statute.

The court is cognizant that he asserts a due process claim, but a petitioner is not permitted to skip the administrative process "by simply reconstituting his claim as constitutional and claiming futility." *Gonzalez*, 355 F.3d at 1018; *see also Mojsilovic v. INS*, 156 F.3d 743, 748 (7th Cir. 1998) ("Although due process claims do not usually require exhaustion because the [BIA] cannot adjudicate constitutional issues, the requirement applies when the petitioner's claim involves procedural errors correctable by the administrative tribunal.") (citation and internal quotation marks omitted). If Mr. Singh is given a custody redetermination hearing, he may prevail; and, if not, he has administrative remedies available to challenge an adverse ruling. *See Z.G. v. Olson*, ___F. Supp.3d___, 2026 WL 1279081, 2-4 (N.D. Ind. May 11, 2026) (Leichty, J.) (requiring exhaustion of administrative remedies in context of immigration bond determination); *see also Singh v. English*, No. 3:25cv1046, 2026 WL 775558 (N.D. Ind. Mar. 19, 2026) (Brisco, J.) ("[D]iscretionary detainees held under 8 U.S.C. § 1226(a) have a whole set of available administrative remedies that should be exhausted before a petition for writ of habeas corpus would be necessary.") (citation omitted). A favorable ruling in the administrative

[1] It appears the process may already be under way (though not completed), because the Warden asserts in his response, without contradiction by Mr. Singh, that a custody redetermination hearing has been scheduled for a date in September in Mr. Singh's removal case.

proceedings could obviate the need to reach his due process claim or, at a minimum, alter its factual basis. *See Z.G.,* 2026 WL 1279081 at 2 (requiring exhaustion of administrative remedies in context of immigration bond determination even though petitioner raised due process claim, because "his entitlement to more procedure or outright release as a gloss from constitutional understandings of due process may change based on how his status and individual interests change (or become moot altogether) based on administrative proceedings"). The court thus leaves the parties to follow their usual process under § 1226.

For these reasons, the court DISMISSES the petition [1] WITHOUT PREJUDICE for lack of exhaustion and DIRECTS the clerk to enter final judgment and close this case.

SO ORDERED.

September 18, 2026

*s/ Damon R. Leichty*
Judge, United States District Court